# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| **ALEJANDRO OLIVERAS RIVERA, CH 13** | : | |
| **TRUSTEE-APPELLANT** | : | **CIV. NO. 15-02035-CCC** |
| | : | **Appeal from the** |
| **v.** | : | **Bankruptcy Court, DPR** |
| **ANTONIO OTERO NAZARIO,** | : | |
| **DEBTOR-APPELLEE** | : | |
| | : | |

## APPELLEE ANTONIO OTERO NAZARIO'S BRIEF
## IN RESPONSE TO THE TRUSTEE'S BRIEF ON APPEAL

Bufete Legal Zeno Gloro, LLC
*Counsel for Appellee-Debtor*

PO BOX 1945 ARECIBO P.R.  00613
TEL: 787-879-1760; FAX: 880-2756
tribunal@zenogloro.com

## DEBTOR-APPELLEE'S TABLE OF CONTENTS

I.  **SUMMARY OF THE ARGUMENT**                                    1 - 4

II.  **LEGAL ARGUMENT**                                            4 - 23

Nature of the dispute; position of the parties and legal
framework to decide the issue of whether partial rental
of the homestead while you reside in it nullifies the protections
of Law 195.                                                       4 - 8

Exclusively in Section 3 functions as a statute of frauds to
prevent multiple homeowners from claiming more valuable
property as their homestead while actually not principally
residing in it; and to prevent multiple registration of homesteads
to the detriment of creditors.                                   8 – 10

The bankruptcy court properly assessed the grammatical function
of the word "exclusively in Section 3 of Law 195; under any
analysis, the word is susceptible to more than one grammatical
application without imposing any limitations on the Debtor's use
and enjoyment of his property.                                   10 - 11

Exclusively only modifies the usage that the family can give to
the property when claiming in place of the owner.               12 - 16

The Trustee's reliance on *In re Navarro* is misplaced; Law 195
does not require or mandate a division of the homestead into
protected and unprotected areas based on other uses being given
to the property by its owner. The presence of tenants on a portion
of the homestead is consistent with the enjoyment of property
afforded to owners under Section 3.                             17 - 19

Law 195 points to Florida and Texas law for guidance;
the weight of authority supports a finding for Debtor.         19 - 23


III.  **CONCLUSION**                                               23

IV.  **CERTIFICATE OF COMPLIANCE WITH RULE 8015**                 23

## DEBTOR-APPELLEE'S BRIEF ON APPEAL

## TABLE OF AUTHORITIES

**Case Law**

- *In re Bratty,* 202 B.R. 1008 (Bankr.S.D.Fla.1996)                     20

- *In re Brizida*, 276 B.R. 216 (Bankr. D. Mass 2002)                     21

- *In re Brown*, 391 B.R. 210 (6th Cir BAP 2008)                     5

- *Croker v. Croker,* 51 F.2d 11 (5th Cir.1931)                     20

- *In re Englander*, 156 B.R. 852 (Bankr. M.D.Fla. 1992),

  *affirmed*, 95 F.3d 1028 (11th Cir. 1996)                     17

- *In re Frederick,* 183 B.R. 968 (Bankr.M.D.Fla.1995)                     20

- *Graham v. Kleb,* 2008 WL 243669 (S.D. Tex. 2008)                     5, 20

- *In re Goode,* 146 B.R. 860 (Bankr.M.D.Fla.1992)                     20

- *In re Lloyd*, 394 B.R. 605 (Bankr. M.D.Fla. 2008)                     5, 20

- *In re Martinez–Whitford,* 199 B.R. 74 (Bankr.D.Mass.1996)                     5

- *In re McBratney*, 2007 WL 2684072 (Bankr. D. Kansas 2007)                     21

- *In re McCambry*, 327 B.R. 469 (Bankr. D. Kansas 2005)                     21

- *In In re McCarthy*, 2011 WL 5833869 (Bankr. N.D.N.Y. 2011)                     21

- *In re Napier*, 144 B.R. 719 (Bankr. W.D. Tex. 1992)                     20

- *In re Navarro* 504 B.R. 316 (Bankr. D.P.R. 2014)                     7, 17

- *In re Nelson*, 178 B.R. 811 (Bankr. W.D. Virg.1994)                     5

- *In Re Renteria*, 470 B.R. 838 (9th Cir BAP 2012)                     10

- *In Re Soto*, 2013 WL 3779382 (Bankr. D.P.R. 2013)                     5

- *Rivera Garcia vs. Registrar of Property*, 2013 TSPR 107 (2013)                     7, 8, 22

- *In re Shell*, 295 B.R. 129 (Bankr.D.Alaska 2003)     **21**

**Bankruptcy Code**

- 11 USC § 522(b)(3)(A)     2

**Puerto Rico Statutes/Laws**

- 31 LPRA  § 1858 et seq (Law 195 §§ 3 – 10)     2-4, 6-13, 15-16, 18-19, 21-23

**Other**

- La guia del derecho: Hermeneutica Juridica at, http://derecho.laguia2000.com/parte-general/hermeneutica-juridica     18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :

**ALEJANDRO OLIVERAS RIVERA, CH 13**                :

**TRUSTEE- APPELLANT**

                                                :     **CIV. NO. 15-02035-CCC**

                                                :     **Appeal from the**

    v.                               :     **Bankruptcy Court, DPR**

**ANTONIO OTERO NAZARIO,**                          :

  **DEBTOR -APPELLEE**                       :

_____     :

## APPELLEE ANTONIO OTERO NAZARIO'S BRIEF
## IN RESPONSE TO THE TRUSTEE'S BRIEF ON APPEAL

COMES NOW, the Debtor-Appellee, Antonio Otero Nazario, represented by the office of the undersigned attorney, and very respectfully submits his appellate brief in response to the Chapter 13 Trustee's brief on appeal, and pleads and prays as follows:

### I.  SUMMARY OF THE ARGUMENT:

This appeal originates from an order entered in case # 13-05391-MCF whereby the bankruptcy court denied the Chapter 13 Trustee's objection to Debtor's claim of homestead exemption under local law. As a preliminary matter and for the sake of clarity and ease of reference, Debtor notes the following: The parties shall be referred to as "Debtor" and the "Chapter 13 Trustee" or the "Trustee". The statute under review, Puerto Rico law 195 of September 13, 2011, as amended, known as the Puerto Rico Homestead Law, codified at 31

LPRA §1858 et. seq. shall be referred to as "Law 195" in Debtor's brief.[1] References to any

docket number shall be to the docket ("Dkt.") of this appeal, particularly as pertains to the

Trustee's brief on appeal ("Trustee's Brief") and his appendix ("Appendix").[2]

    The bankruptcy court correctly overruled the Trustee's objection to the Debtor's claim of a

full homestead exemption for his principal residence under Law 195. The bankruptcy court's

Opinion and Order (Dkt. 8: Appendix pgs 236-249) (the "Order") thoroughly reviewed,

considered and aptly rejected each of the Trustee's arguments against the exemption in a

thorough and well-reasoned manner.

    At the time of the petition, the Debtor was renting the lower level of his principal residence.

Pre-petition, Debtor properly filed a deed of homestead under the provisions of Law 195 in the

registry of property and exempted the property pursuant to 11 USC § 522(b)(3)(A) in his

schedules. The Trustee claims that this partial rental of the property effectively nullifies the

homestead protection because the word "exclusively" is Section 3 of Law 195 dictates that any

property claimed as a homestead must be used solely and exclusively as a principal residence,

barring any other uses for the property, and may only be occupied by the owner or his family.

(See Dkt 8: Trustee's Brief, pg 17)[3] The Debtor disagrees. The word "exclusively" can mean any

number of things, all of which allow the Debtor to reside in and partially rent his property while

retaining his right to a full homestead exemption. The bankruptcy court agreed with the Debtor

and rejected the Trustee's strict construction of a single word in a statute that was enacted to

expand the homestead protection under Puerto Rico law to include the full value of a principal

---

[1] Debtor's memoranda in the bankruptcy court alternatively referred to Law 195 as the "Act", the "Homestead Act".

[2] The Trustee was very gracious in filing a thorough Appendix, therefore Debtor will not file another and will refer to his, filed at Dkt. 8 of this case.

[3] References to pages on the Trustee's appellate brief shall be to the numbers per the CM/ECF system marked across the top of the document.

residential structure and a lot of land of any size. Nothing in the Law bars other forms of enjoyment and exploitation of the fruits of said homestead property.

The Trustee also argues that the bankruptcy court erred by rejecting his alternative argument based on Section 7 of Law 195 that governs the rental of the *entire* property under a claim of homestead under certain specific circumstances without destroying the homestead protection. *Id.* The bankruptcy court again was correct in finding for the Debtor. Section 7 of Law 195 is irrelevant to the instant dispute that involves only the partial rental of homestead property while the owner still resides in it.

The Trustee also complains that the bankruptcy court should have adopted a partial exemption approach to the dispute based on inapplicable precedents whereby the portion of the Debtor's homestead occupied by him should be partially exempt, while the rental portion should be deemed un-exempt and subject to the reach of creditors. *Id.* Yet, under applicable non-bankruptcy law, there simply is no basis to craft such a remedy. Furthermore, the bankruptcy court correctly decided that nothing in Law 195 or in the facts of this case compels the result urged by the Trustee. Simply stated, enjoying the fruits of your property by partially renting your homestead while residing in it is not prohibited under Law 195 or any other applicable law.

Finally, the Trustee is appealing the separate order entered by the bankruptcy court on July 16, 2015 confirming the Debtor's chapter 13 plan. (Dkt. 8: Trustee's Brief pgs. 16-19) (See Dkt. 8: Appendix pg. 250) (the "Order Confirming Plan"). The Debtor will not engage the Trustee's arguments and issues raised on the subject of plan confirmation. The Debtor sincerely believes that the bankruptcy court acted well within its purview when it entered the Order Confirming Plan. Furthermore, Debtor is convinced that the Order Confirming Plan was entered after due notice and opportunity to be heard was afforded to all interested parties over an extensive period

of time. Nevertheless, should the Trustee prevail on the substantive issue concerning the homestead exemption, the Debtor understands that the confirmation issue will become moot. Therefore, Debtor will not brief anything further concerning the Order Confirming Plan, except to pray that it, too, should be upheld and affirmed.

## II. LEGAL ARGUMENT:

**Nature of the dispute; position of the parties and legal framework to decide the issue of whether partial rental of the homestead while you reside in it nullifies the protections of Law 195.**

The substantive and undisputed facts of the case are as follows: Debtor owns a bi-level residential structure in Vega Baja, Puerto Rico that he occupies as his exclusive principal residence and uses the upper-level of the structure as his dwelling place. Pre-petition, he refurbished the lower-level of the house to provide housing for his family and, from time to time when the family is absent, he rents the lower-level on a verbal, month-to-month basis to other people. As has been the history of this residence, Debtor expects to shelter his family in the future on an as-needed basis. The lower-level was rented on the petition date. Debtor filed for homestead protection under Law 195 prior to the petition date.

The Chapter 13 Trustee objected to Debtor's homestead exemption arguing in a series of papers filed below that the partial rental of Debtor's residence constitutes an abandonment of the homestead protection under Section 3 of the Law 195. (See Dkt. 8: Appendix, pgs. 20-24; 32-39; 67-87 & 172-184). The central tenet of the Trustee's argument is that the perfunctory and mechanical grammatical application of his interpretation of the meaning of the word "exclusively" in Section 3 should be the principal basis for the court to surmise the true scope, operation and application of the fundamental social and economic policies promoted in Law 195. (Dkt. 8: Trustee's Brief, pgs. 21-23). The Debtor believes that the word "exclusively" is

4

ambiguous and is susceptible to more than one interpretation under the law, most of which, except the Trustee's version, allow the Debtor's exemption under the facts of the case.

First, we start with the proposition that "[e]xemptions should be liberally construed in favor of the debtor." *In re Brown*, 391 B.R. 210, *5 (6th Cir BAP 2008) (unpublished opinion) It is well established that when the legislator's intent is ambiguous, exemptions should be liberally interpreted in favor of the Debtor. *Id.* "[I]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Id.* citing *In re Martinez–Whitford,* 199 B.R. 74, 77 (Bankr.D.Mass.1996). The party objecting to an exemption has the burden of proving that the property claimed by the debtor should not be exempted. *Id.* citing Fed. R. Bankr.P. 4003(c). Courts must follow the principle that any ambiguities found in state exemption laws must be resolved in favor of debtors. *In re Nelson*, 178 B.R. 811 (Bankr. W.D. Virg.1994) (citations omitted); *see also*, *In Re Soto*, 2013 WL 3779382, *3 (Bankr. D.P.R. 2013) (Noting that the Puerto Rico Supreme Court has refused to follow the literal interpretation of a statute if doing so leads to an absurd result not in accordance with its legislative intent).

The standard uniformly applied to objections to homestead exemptions is that of 'abandonment'. "Once the claimant has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated." *Graham v. Kleb*, 2008 WL 243669, *2 (S.D. Tex. 2008) citations omitted). A homestead is abandoned when it no longer serves as the owner's bona fide home and place of permanent residence. *In re Lloyd*, 394 B.R. 605, 611 (Bankr. M.D.Fla. 2008) (internal citations and quotations omitted)

At issue in this contested matter is the possible scope, meaning and application of the word "exclusively" as used in Section 3 of the Law 195 which reads as follows: **Homestead Right.-** *"Every individual or head of household residing in Puerto Rico shall have the right to own and enjoy, under the homestead right concept, a parcel and the structure located thereon, or a residence under the regime established in the Condominiums Act, which belongs to him/her or which he/she lawfully owns, and occupied by him/her or his/her family exclusively as a principal residence".*[4]

There being no dispute as to Debtor's ownership and use of the property as his principal residence, the Trustee had to establish abandonment of the homestead protection either by overt acts of the Debtor or by operation of law, supported by tangible references to something to that effect found within the provisions of Law 195 or related case law. He could not and thus, the Order should be affirmed.

Despite some evolution in his argument as the dispute progressed in the bankruptcy court for nearly a year-and-a-half, the Trustee's essential argument is that a literal application of the word "exclusively" in Section 3 creates occupancy **and** usage restrictions on the homestead so severe, that the word essentially nullifies the homestead rights that the very same statute sought to grant and extend to the overburdened homeowners of this nation and their families. The Trustee grabbed hold of the definition of "exclusive" in the Merriam Webster online dictionary to argue the obliteration of the new and revolutionary homestead protections granted under Law 195. (Dkt. 8: Trustee's Brief, pg 21, f/n 15). However the Trustee has failed to address the sole legal issue before the Court, that is: Does partial rental of the Debtor's residence constitute abandonment of the homestead protection? Instead, he delves into an exploration comparing and

---

[4] Official translation of Law 195 used by the bankruptcy court to resolve this dispute with the general agreement of the contending parties as to the efficacy of the translation. (Dkt 8: Appendix, Order pg. 239, f/n 1).

contrasting the old homestead law and the new; he conveniently disregards Texas case law referenced by Law 195 as the authority to follow together with Florida law, and he cites the decision in a factually similar case of *In re Navarro* 504 B.R. 316 (Bankr. D.P.R. 2014).[5](Dkt. 8: Trustee's Brief, pgs. 20, 22, 25-27).

The standard of abandonment of the homestead protection in Puerto Rico, just like in other jurisdictions cited in Debtor's memoranda, was established by the Puerto Rico Supreme Court (PRSC") in various cases under the old homestead laws. (Dkt. 8: Appendix, Trustee's motion in compliance, pgs. 180-183) The old PRSC decisions variously discussed by the Trustee in his memoranda only serve to ratify the Debtor's argument that we cannot interpret and apply the fundamentally equitable and humanitarian policies of homestead protection through dogmatic adherence to the literal meaning of words or functions of grammar. Otherwise, discussion of old homestead cases does not shed much light over the substance of this dispute.

In October 2013, the PRSC issued an opinion interpreting and applying the provisions of the new Law 195. *See, Rivera Garcia vs. Registrar of Property*, 2013 TSPR 107 (2013). The issue concerned Section 9 of the Law 195 and is not directly relevant to the instant matter. However, what is relevant is the manner in which the entire Court interpreted and applied the otherwise straightforward provisions of the section of the statute in question.

In *Rivera Garcia* the Registrar of Property refused to file a widow's homestead deed because not all of the co-owners (the widow's co-heirs) appeared in the notarized document required under Section 9. On appeal, the PRSC held against the widow finding ambiguity and certain "lagoons" in Law 195. The PRSC held that all of the co-owners were required to notarize the homestead petition, regardless of their interest in the property. The Court went beyond the text of

---

[5] Debtor's memoranda in the court below referred to this case as *In re Veguilla*, since the name of the case is in fact Veguilla Navarro. However for the sake of uniformity with the Trustee, we shall refer to it as *Navarro*.

Law 195 to apply doctrines of community property developed under the Civil Code of Puerto Rico in order to deny the widow's claim that only she had to register her ownership or interest in the property.

*Rivera Garcia* reiterates and reinforces the doctrine that the Law 195 must be analyzed and implemented by courts in accordance with the fundamental public policies contained in its provisions and the liberal doctrines of statutory interpretation followed by the state courts, and not by strict adherence to the statutory language or singular words, as pressed by the Trustee.

Despite some ambiguity in the statute introduced by the word "exclusively" in a run-on sentence in Section 3, there is no ambiguity in the historically important policies underlying the statute which must be enforced to benefit homesteaders. Law 195's revolutionary *in rem* right of protection attaches to the estate itself and protects the entire land and the residential structure from attachment and forced sale by general creditors with few exceptions enumerated in Section 4 of the law, not relevant here. Therefore, the disputed language can be read as compelling homesteaders to claim, register and commit to inhabiting one, and only one single residential property as their principal residence. They cannot claim that property as a homestead if in fact they use it, for example, as a second home, a vacation home or some other temporary abode. This, in order to safeguard the interests of creditors against multiple homeowners and reinforce the criminal penalties under the law.

**Exclusively in Section 3 functions as a statute of frauds to prevent multiple homeowners from claiming more valuable property as their homestead while actually not principally residing in it; and to prevent multiple registration of homesteads to the detriment of creditors.**

Section 9 of Law 195 requires a notarized writing with the full faith and credit of the Commonwealth in order to validly claim homestead protection. Coupled with the Law's reference to criminal sanctions in Section 10 for registering or causing the registration of more

8

than one homestead, the word "exclusively" limits the principle residence to a single property actually occupied by the claimant or by his family as a principal residence, but not necessarily exclusively occupied by them or for residential use only.

The word 'exclusively' in Section 3 of Law 195 serves as a statute of frauds because it is undisputable that many people own more than one piece of residential property in Puerto Rico. The word 'exclusively' does not restrict the use of the house itself to being solely and exclusively inhabited by the Debtor and used only and exclusively as his principal residence, nor does it limit the number or relationship of the persons actually residing within the residential space of the house. The law only limits the type of persons who can file for the exemption to owners and/or legal possessors of a residence, and requires them and/or their families to live in the house while exempt. It does not foreclose any other person from living in the house. In this context, the word 'exclusively' is intended to prevent frauds on creditors because it limits the Debtor's choice of principal residence to just one house in one place, and requires the Debtor to actually live in the chosen principal residence, as opposed to living in some other residential less valuable property that he may possess elsewhere.

In essence Law 195 is an anti-collection statute that strictly forbids the collection of commercial debts by attaching and auctioning off a person's homestead. Yet, in order to avoid a fraud on creditors who could otherwise attach and sell other residential properties of debtors, the legislator limited the choice of homestead to that land and structure where you actually live and occupy as your principal residence; indeed, under penalty of criminal sanctions. Thus, a person can no longer shelter superior valuable property from commercial creditors under the guise of homestead, while he does not actually use it as his principal residence—irrespective of any other

gainful uses to which he may put the same property, as in this case. Otherwise, Law 195 does not restrict or limit other uses of the property itself, nor does it forbid other people from living in it.

**The bankruptcy court properly assessed the grammatical function of the word "exclusively in Section 3 of Law 195; under any analysis, the word is susceptible to more than one grammatical application without imposing any limitations on the Debtor's use and enjoyment of his property.**

As previously stated, throughout this dispute the Trustee has heavily relied upon rules of grammar and linguistic analysis to support his argument against granting Debtor's exemption. The thrust of the Trustee's grammatical argument relies on the "last antecedent rule" arguing that that "exclusively" is unambiguous because it serves to modify "occupied" in the statute given the alleged proximity of those terms, as per the mentioned grammatical rule. (Dkt. 8: Trustee's Brief, pg. 21-23) The Trustee has expanded his reading of "exclusively" in Section 3 to compel a finding that the house must be owned *and* occupied *exclusively* by the Debtor and used *exclusively* as a principal residence by Debtor (or by his family, as the case may be). This is strained reading. Section 3 only requires that the Debtor, and only the Debtor, must own *and* occupy the residence as his exclusive principal residence baring any other form of abode as a condition to homestead protection. He does.

Furthermore, Debtor notes that customary applications of rules of grammar and of statutory construction such as the last antecedent rule advocated by the Trustee are "flexible and not universally binding" when the rule can be overcome by other indicia of meaning. *See, In Re Renteria*, 470 B.R. 838, 842 (9th Cir BAP 2012), *citing Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). We must not lose sight that the statute exempts the complete structure, not a part of it and that the right to file a claim of homestead protection is granted to an individual or head of family, i.e., the homeowner and not the entire family. Also, note that the claimant in Section 3 is separated from his family by the word "or" which always acts as a disjunctive incorporating two

different concepts and requires two separate forms of analysis of the nouns "him"--the claimant, as distinguished from "his family", as holders of the right in place of the claimant. Therefore, the bankruptcy court seems eminently correct in its application of grammatical canons of interpretation and construction to reject the Trustee's unnecessary (and unsupportable) restrictive reading of a singular word in an entire statute. The bankruptcy court appropriately dissected the grammatical structure of the troublesome final clause in the statute and found that the adverb "exclusively" modifies the "as principal residence" and not "occupied." (Dkt. 8: Appendix, Order at pg. 241 lines 21-22).

Even if, as the Trustee claims, "exclusively" modifies the occupancy of the residence, the Debtor's position is still correct and the Order must be affirmed because such a reading supports the Debtor's contention that any homesteader claiming the protection under Law 195 must use the property as a principal residence for himself. Not as some other sort of abode, as previously discussed such as second homes or temporary or vacation residences. Furthermore, even if the Trustee's grammatical reliance on "exclusively" modifying occupancy is correct, the Debtor is still correct that exclusively can modify the occupancy that the family must give to the principal residence. Reading "exclusively" as a separate requirement just for the family because, under the statute, the homesteader must already own *and* occupy the structure as a principal residence for it to be protected. Thus requiring exclusivity of occupancy in the Debtor alone in that context seems superfluous--not to mention tantamount to a taking without just compensation of any homeowner's right to use and enjoy his property. The readings proposed by the Debtor and adopted by the court below do not obliterate the statute, nor does it insert words where there are none and indeed gives meaning to the disputed language while at the same time preserving the statutory purpose and intent of the law in favor of Debtor.

11

**Exclusively only modifies the usage that the family can give to the property when claiming in place of the owner.**

The word "exclusively" in the phrase "*occupied… [by the homesteader's] family exclusively as a principal residence*" can be interpreted as applying solely to the use given to the house by the homesteader's family when the homesteader is not residing in it. This interpretation conforms neatly with the various provisions of the Law 195 that provide for continuation of the exemption in cases where the owner or head of family is no longer present, such as Section 6: **Death, Abandonment [of the family], or Divorce.** Through Section 6, the next-of-kin, widows and minor children con claim and continue the protection in place of the disappeared principal claimant. "Exclusively" also ties in with the provisions of Section 7: **Homestead in case of Leasing.** Under Section 7 (similar to Section 3), the causes "that compels the individual or his/her family to temporarily relocate to another residence in or outside of Puerto Rico, shall not terminate the estate of homestead, unless another property is acquired and such property becomes the beneficiary's principal residence"…

Thus, assuming without conceding that there is some merit to the Trustee's linguistic theory that "exclusively" modifies the occupancy of the residence thus prohibiting its *partial rental*, we can read the phrase "exclusively as a principal residence" just after "family" as a singular limitation of the family's use of the premises in cases where the owner or lawful claimant is no longer present. In that way, just as the Trustee is doing, we may conclude that partial rental of the premises may indeed be forbidden, but only as to the family, because the family can otherwise rent out the entire residence for cause under Section 7. Nevertheless, Debtor insists that partial rental of the property is not inconsistent with any aspect of Law 195 and is not grounds for abandonment of the homestead under any circumstances.

As seen in the referenced Sections 6 and 7 of Law 195, the family acts as a placeholder for the principal homestead claimant. Therefore, to the extent that other uses for the residence are prohibited in Section 3, "exclusively" can only apply to the family's use of the homestead as its principal residence because, if the claimant is present and occupying the house, it appears superfluous to require him to exclusively occupy what he already must occupy to qualify for protection under the statute. The family under Law 195 includes a wide-range of relatives of many possible ages whom enjoy the protection even after the claimant is physically gone or dead. The legislator took notice that family members of the claimant may not always be able, legally qualified or willing to take his place under the law. Therefore, if anyone other than the claimant wants to *continue* the homestead exemption they must be family members described in the statute and they are compelled, as placeholders for the claimant, to use this and only this property as their exclusive principal residence. Otherwise, we will have cases of claimants who have abandoned the estate keeping it from the reach of creditors –and bankruptcy trustees-- by asking any statutorily qualified family member to stay there and act as if they intended this to be their principal residence, although not true.

Debtor reiterates his argument that "exclusively" in Section 3 is meant to prevent frauds on creditors by requiring people to claim and live in only one property as a principal residence in cases where they own other estates and may elect to reside in them. Alternatively, because exclusively is written right after the word 'family' and given the legal ability of family members to preserve and prolong the homestead in the claimant's absence, then exclusively may serve to regulate the use and/or occupancy of the property by the family.[6] These are just two plausible

---

[6] Note that Debtor is not conceding that the word exclusively can legally serve as a double restriction affecting both the use and occupancy of the homestead as argued by the Trustee. In this discussion, Debtor proposes that exclusively only defines the rights of the family, not the claimant. Debtor does not believe that exclusively is intended to regulate either the use or the occupancy of the house to any singular function or any discrete group of

13

and reasonable interpretations of the function of the word exclusively offered without having to add or subtract from the statute or render meaningless any of its words or provisions. Contrary to the Trustee's argument, more that one interpretation of "exclusively" can be found to give force and effect to the important social policies imbued in the statute. On this ground, and for the unassailable reasons given in its Order, the bankruptcy court properly overruled the Trustee's objection and should be affirmed.

To bolster Debtor's reading that "exclusively" does not prohibit partial rental of his residence either by him or by his family (should he be absent), Debtor believes the case of *Santoni v Llinas*, 10 D.P.R. 199 (1944) is very instructive.

In *Santoni* the PRSC ruled against a creditor challenging the right of homestead due to, among other facts, the partial rental of the property. Whereas the legal issue placed before the PRSC in *Santoni* was waiver of the homestead protection, the facts and the holding conclusively support Debtor's claim of homestead in this case. The wife, Mrs. Santoni, and her children left the homestead for particular reasons and the husband remained behind inhabiting just one room of the residence. The remainder of the residence was leased and operated as a hotel or hostel. The husband mortgaged the property and signed a waiver of homestead right on behalf of himself and his wife. The husband defaulted and the creditor foreclosed on the property. Years later, Mrs. Santoni returned and sued the creditor to claim her homestead right worth $500 at the time. In upholding the wife's right to claim the $500, the PRSC rejected any notion of abandonment of the principal residence notwithstanding the fact that the home was partially rented and administered more like a hotel than a private residence. The court simply did not find any evidence or intent to abandon the homestead under the circumstances.

---

people beyond the requirement that Debtor uses it as his principal residence and not as some other form of abode.

On the facts, *Santoni* is clearly applicable to this case where we have partial rental of the homestead coupled with residency by the Debtor. *Santoni* also debunks the Trustee's hypothetical concerns over the ramifications of the Order. (Dkt. 8: Trustee's Brief, pg. 24) Simply put, there are any number of laws in Puerto Rico that regulate and authorize the use of residential properties for gainful or social purposes, such as student dormitories, home offices, foster homes, places of worship, hostels, etc., as was upheld in *Santoni*. *Santoni* also illustrates the monumental change in public policy between the old homestead laws that only protected a right to a minimal amount of money in cases of forced sales, and Law 195 that protects against liens by general creditors and protects the entire value of the homestead. As the bankruptcy court aptly suggested in the Order, the local legislators must have examined the legal basis upon which they drafted and enacted Law 195 and, for that reason, the term "exclusively" cannot be read in isolation from the statutory framework and the rights and privileges of property owners to use, enjoy and lawfully exploit the fruits of their properties under the law. (Dkt. 8: Appendix, Order at pg. 243 line 13 through pg. 247 line 1).

Section 7 prescribes a three-prong test as the only basis for abandonment of the homestead under Law 195 in cases where the principal residence is being leased.[7] First the homestead claimant, or his family if they hold the claim, must be physically removed from the premises for the causes listed in the statute that are not at issue here. Next, the lease must involve ***the entire residence***. Not just a portion of it as in this case. Finally, abandonment takes place if the claimant or his family that was holding his claim takes up a principal residence elsewhere, even if they had good cause to leave. Once again, we find the forbiddance of taking up another principal residence away from the homestead that you claim is protected against creditors. The injunction

---

[7] Other then leasing the entire property for reasons other than those enumerated in Section 7, the only other grounds for abandonment of the homestead exemption are contained in Section 4 of Law 195, none of which apply to this case. Partial rental is not one of them.

15

against taking up another principal residence in Section 7 grants further support to Debtor's reading of "exclusively" as meaning that one can only legally claim and actually occupy only one property as a principal residence. Not that said residence must be exclusively occupied solely as a residence, to no other lawful or gainful purpose.

In summary, the bankruptcy court correctly rejected the Trustee's alternative argument based on Section 7 because Section 7 is immaterial to the Debtor's claim of homestead under the facts of this case. The facts of this case do not meet the very strict and limited test for abandonment set forth in Section 7. Thus, the bankruptcy court did not err when it rejected the Trustee's argument that Section 7 regulates the only instances under Law 195 when homesteaders can lease their property. Developing its holding that Section 3 allows partial rental as part of the Debtor's use and enjoyment of the homestead under the law, the bankruptcy court held that Section 7 "expands on this particular faculty of ownership by allowing homesteaders to lease their claimed homestead property entirely, while foregoing their temporary change in occupancy to another residence." (Appendix Dkt. 8, Order at pg. 245 lines 12-14).

Clearly the legislator could have mentioned partial rental in Section 7 or elsewhere as an instance of abandonment. Instead the legislator chose to incorporate the old decisions of the PRSC rendered under the old homestead laws to prescribe the only basis for abandonment of the homestead by virtue of renting it. Thus, abandonment requires leaving the property, renting the entire homestead, and taking up another principal residence elsewhere. Applying the *expressio unius est exclusio alterius* doctrine to the facts of this case, the Trustee's objection to Debtor's homestead on the basis of the provisions of Section 7 of Law 195 were appropriately overruled because partial rental while you reside in the property was not included as an event of abandonment in the statute.

**The Trustee's reliance on *In re Navarro* is misplaced; Law 195 does not require or mandate a division of the homestead into protected and unprotected areas based on other uses being given to the property by its owner. The presence of tenants on a portion of the homestead is consistent with the enjoyment of property afforded to owners under Section 3.**

The Trustee's final argument urging a partial exemption relies on *In re Navarro*, 504 B.R., *supra* (Bankr.D.P.R. 2014) to the extent that that case purports to apply the holding in *In re Englander*, 156 B.R. 852 (Bankr. M.D.Fla. 1992), *affirmed*, 95 F.3d 1028 (11th Cir. 1996). Such reliance is misguided because those cases are inapposite.

Debtor's honest opinion is that *Navarro* misapplies the holding in *Englander* on the specific issue at hand: Debtor's partial rental of his homestead. Instead *Navarro* attempts to incorporate *Englander's* remedial aspects based on facts and issues under Florida law that are not applicable to this matter. The bankruptcy court properly rejected alternative "partial exemption" approach when it stated that "this Court may not stray from the text of Act 195 to formulate alternative approaches that regulate the homestead protection based on deductions from other jurisdictions' homestead laws or their interpretative caselaw. The Trustee's alternative proposition for the partial denial of homestead exemption is rejected for lack of statutory basis". (Dkt. 8: Appendix, Order at pg. 248 lines 9-12).

*Englander* is on point only as it concerns the partial rental of the homestead because the court held that, notwithstanding the occupancy restriction under Florida's homestead law and evidence of clear legislative purpose against the commercial uses of homestead, the debtor was entitled to his full exemption after finding that the rented garage apartment at issue was built on homestead property for utility purposes and not rental purposes. In this case, it is undisputed that the Debtor's purpose in subdividing his residence is to provide housing for his family, and not for commercial purposes. At any rate, commercial use as part of his enjoyment of the "fruits" of the Debtor's property is perfectly permitted without affecting his homestead. Therefore occupancy of

17

any portion of the structure by the Debtor as a principal residence comports with the public policies sought to be fostered by the statute and any restriction on the use of the structure in the manner pressed by the Trustee can only apply, if at all, to the family, but does not extend to the owner, logically or linguistically.

More than disputes over language and technical rules of statutory construction, Debtor's argument is guided by simple principles of hermeneutics. First and foremost, all new law replaces the old and if the new law is susceptible to more than one interpretation, then we must choose the one that produces the best results. Grammar and linguistic analysis are there to aid in the construction and application of the law as it was intended by the legislator. Logic in case of statutory ambiguity serves to help discern the social and historical context in which the law came to be and knowledge of history helps to the extent of understanding how and why the new law was enacted to replace the old law. Sociological context helps us apply the new law effectively to address the social changes that it promotes.[8]

Under the above guidance, the Order should be affirmed because it gives Law 195 its intended meaning and purpose favoring the grant of exemption. Law 195 was unquestionably passed to protect the overburdened and struggling debtors of Puerto Rico from losing to ordinary creditors and bankruptcy trustees, their last valuable possession: Their home. Law 195 was legislated with few restrictions or conditions upon the homesteader—certainly nothing in the provisions of Law 195 supports the onerous restrictions of use and occupancy argued by the Trustee. Its words can and should be read with logic and reason to carry out its remedial purposes and no other restrictions should be imposed or distilled from its plain language than those readily contained in the text. This Law was enacted at a time when tens of thousands of

---

[8] *See*, La guia del derecho: Hermeneutica Juridica at, http://derecho.laguia2000.com/parte-general/hermeneutica-juridica.

Puerto Ricans per year are fleeing the economic depression experienced in the country for nearly a decade. The Law came to be in the midst of the largest foreclosure boom ever experienced in the country; a boom that is devastating debtors as well as creditors. The old homestead laws did not run as an *in rem* right in property as does Law 195, but only protected a miserable amount of money that did nothing to preserve the dignity and well-being of the Puerto Rican family and society at large.

Law 195 must be read harmoniously in conjunction with existing laws that provide for and protect the public's interest from homestead abuses.[9] Laws that we must presume the legislator knew or had to be aware of when enacting and inserting the word "exclusively" in Section 3 of Law 195. Likewise, the Trustee argues that the PRSC has historically looked to and applied the law of other states such as Alabama and Illinois when rendering decisions under the old, abrogated local homestead law. (Dkt. 8: Trustee's Brief, pgs. 27-28) However, the Trustee does not cite or discuss a single, similar case from either jurisdiction in support of his strained reading of Section 3. Debtor urges this court to do the same and look at the weight of authority in factually similar cases referenced by Debtor throughout this dispute in his memoranda to the court below. (Dkt. 8: Appendix, Debtor's response pgs. 43-64; Debtor's rejoinder pgs. 89-101; and Debtor's memorandum in compliance pgs. 185-201).

**Law 195 points to Florida and Texas law for guidance; the weight of authority supports a finding for Debtor.**

Law 195 prompts us to consider Texas and Florida law as guideposts to its application. Throughout his writings, the Trustee has avoided Texas law. There are no Puerto Rico state court precedents directly applicable to this controversy.

---

[9] See Dkt. 8: Appendix pgs. 197-98 of Debtor's memorandum in compliance for a review and references to existing laws regulating uses for the homestead, particularly for partial rental purposes without affecting the right to exempt the full value of a homestead from the reach of creditors.

Under Texas law, a right of homestead is established by showing overt acts of homestead usage and an intention to claim the estate as a homestead, regardless of actual occupancy by the debtor. "Once the claimant has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated." *Graham v. Kleb*, 2008 WL 243669, *supra* *2 (S.D. Tex. 2008). Abandonment must be established by "undeniably clear" evidence that the homestead has been abandoned with no intent to reclaim it. *In re Napier*, 144 B.R. 719, 723 (Bankr. W.D. Tex. 1992).

In Florida, "[i]t is settled law in Florida that the constitutional homestead exemption "should be liberally construed in favor of the party claiming the exemption and that the exemption's purpose is to protect and foster the family home." *In re Goode*, 146 B.R. 860, 862 (Bankr.M.D.Fla.1992). "Thus, the burden is on the objecting party to make a strong showing that the claimant is not entitled to the claimed exemption." *Id.* "The homestead exemption should be liberally construed to effectuate its remedial purpose, but at the same time, the Court must take care to prevent it from becoming an instrument of fraud." *In re Bratty*, 202 B.R. 1008 (Bankr.S.D.Fla.1996) (citing *Croker v. Croker*, 51 F.2d 11 (5th Cir.1931)). "Once property is imbued with homestead status, it remains homestead until it is abandoned." *In re Frederick*, 183 B.R. 968, 971 (Bankr.M.D.Fla.1995). [...] A homestead is abandoned when it no longer serves as the owner's "bona fide home and place of permanent [residence]".' *In re Lloyd*, 394 B.R. *supra* at 611 (internal citations and quotations original).

Applying the "strong showing" evidentiary standard under Florida law (*Lloyd*, 397 B.R. *supra* at 611), or the "undeniably clear" standard under Texas law (*Napier*, 144 B.R. *supra* at 723), it is undisputed that the Debtor is both using his house as his homestead and has properly

filed for homestead protection under local law. Therefore, the burden shifted to the Trustee to overcome the exemption and he failed.

The court will note that every decision in the cases referenced by Debtor clearly and unambiguously overruled objections by trustees and creditors to a claim of homestead in cases where the debtors partially rented their principal residential property. *See, e.g., In re McBratney*, 2007 WL 2684072 (Bankr. D. Kansas 2007); *In re McCambry*, 327 B.R. 469 (Bankr. D. Kansas 2005); *In In re McCarthy*, 2011 WL 5833869 (Bankr. N.D.N.Y. 2011); *In re Brizida*, 276 B.R. 216 (Bankr. D. Mass 2002); *In re Shell*, 295 B.R. 129 (Bankr.D.Alaska 2003).

Therefore, Debtor urges this court to uphold the lower court's Order insofar as its analysis and conclusion square with the letter of the law and its public policies. Clearly, to the extent that one can read a restriction or limitation in Section 3 of Law 195, then "exclusively" can and does mean that the Debtor must be residing in his house only as his principal residence. He cannot be there seeking refuge under some other guise of ownership, be it temporary or recreational or as a second home. The reason is simple and has been argued previously. The law seeks to avoid people who own multiple properties from registering the more expensive property under the homestead protection, whereas they probably don't use it as a principal residence. That would be a fraud on creditors.

To summarize, the bankruptcy court correctly upheld the Debtor's interpretation of the function of the word "exclusively" as requiring an exclusivity in the Debtor's declaration and use of the homestead, not to shield its value from the reach of creditors, but to actually use it as his principal residence to the exclusion of any others that he may own. Law 195's reference to criminal sanctions is reinforced by the use of "exclusively" and seeks to balance debtor protections with the rights of creditors by strictly forbidding debtors from making their residence

in another property while claiming the homestead exemption for a more valuable one, or several. Alternatively, the word "exclusively" can be read to only condition the use of the homestead when the family, is in possession of the residence. More importantly, the word "exclusively" can be perfectly read to apply to the Debtor's actual use of the property, i.e., that he must use it as his actual principal home, and not in any other quality such as a second home, a vacation property or as a temporary abode.

The bankruptcy court, just like this court, is not required by law to determine the actual, only or unique meaning and import of the word "exclusively" in Section 3. The test is to find any logical and practical meaning for the word in the entire context of the Law, given its important remedial purposes. Obviously the sensible, practical and grammatically plausible readings given to the word "exclusively" by Debtor and applied by the bankruptcy court, plus the Trustee's limited reading of it is the best indication that the term is indeed, ambiguous. Therefore, the Order of the bankruptcy court should be affirmed because any ambiguity in the statute must be construed in favor of Debtor. Furthermore, the Order should be affirmed because it stands squarely upon applicable federal and state interpretational law that if there is any possible reading of the disputed text in any manner that gives it meaning without denying Debtor the protection of Law 195, the court must find for Debtor. The PRSC in *In re Rivera Garcia, supra* already held that Law 195 is ambiguous and contains "lagoons." The subject of partial rental of the homestead is one such "lagoon" and yet, it is a perfectly valid use as part of Debtor's natural right to enjoyment of his property because the stature only forbids the full and complete rental of the house without good cause. Finally old PRSC cases like *Santoni* taken in conjunction with the statutory silence on the issue of partial rental is sufficient grounds to find that partial rental of the

22

principal residential property does not constitute abandonment of any part of the Debtor's homestead exemption over it.

## III. CONCLUSION

In conclusion, the bankruptcy court correctly harmonized the letter of law with federal and state interpretational policy of reading exemption statutes in the light most favorable to debtors. Also, the court below adequately construed the impact of Law 195 by reference to the state law tradition of expanding homestead rights in the face of ambiguity and inequity, based on the Debtor's natural rights to use and enjoy his property under the Civil Code. Under any analysis, the Trustee failed to carry his burden of demonstrating that Debtor abandoned his homestead. Also, the Trustee failed to meet the burden of demonstrating that the disputed text of the law is absolutely clear, unambiguous and not subject to any other plausible and sensible interpretation. The disputed text was harmoniously interpreted by the lower court in a way that benefits homesteaders and does not obliterate the words in the statute and this court should adopt that interpretation and affirm the Order below.

**THEREFORE**, for all the foregoing reasons, the Debtor pleads and prays that the bankruptcy court's Order denying the Trustee's objection to Debtor's claim of homestead exemption and the Order Confirming Plan be, AFFIRMED.

## RESPECTFULLY SUBMITTED.

## IV. CERTIFICATE OF COMPLIANCE: Debtor-Appellee hereby certifies that the foregoing responsive brief is in compliance with Rule 8015 of the Federal Rules of Bankruptcy Procedure.

### CERTIFICATE OF SERVICE

I hereby certify that on this same date I electronically filed the above Debtor-Appellee's brief on appeal with the Clerk of the Court using the CM/ECF System which sends notification of such filing to all those who have registered for receipt of notice by

23

electronic mail, including the US Trustee and the Chapter 13 Trustee, Alejandro Oliveras Rivera.

In Arecibo, Puerto Rico this 11th day of April, 2016.

By:    /s _____

EDWIN MATOS MALDONADO
USDC 226403
FELIX M ZENO GLORO
USDC 124212
LIAVANESSA FONTANEZ RUIZ
USDC 213707

*BUFETE LEGAL ZENO GLORO, LLC*
PO BOX 1945 ARECIBO P.R.  00613
TEL: 787-879-1760; FAX: 880-2756
tribunal@zenogloro.com

24